UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CHRISTOPHER CLARK,<br><br>　　　　　*Plaintiff*,<br><br>vs.<br><br>LUCIAN GYGAX,<br><br>　　　　　*Defendant*. | Case No.:<br><br>**JURY DEMAND** |

Plaintiff, Christopher Clark, by and through his counsel, Lipsitz Green Scime Cambria LLP, and for this Complaint and Jury Demand, respectfully states to the Court as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Christopher Clark ("Plaintiff" or "Chris") is an individual residing in Racine County, Wisconsin, at all times material hereto.

2. Defendant Lucian Gygax ("Defendant" or "Luke") is an individual residing in Calabasas, California, at all times material hereto.

3. The amount in controversy in this case exceeds $75,000.00 and there is complete diversity of citizenship amongst the parties.

4. Based on the foregoing, jurisdiction and venue are appropriate in the Eastern District of Wisconsin.

### FACTUAL BACKGROUND

5. Plaintiff Christopher Clark ("Plaintiff" or "Chris") is a world-renowned game designer, author, and businessman. Over the last 43 years, Chris has written and published over 100 titles through his independent publishing company, Inner City Games Designs ("ICGD").

6. During the early stages of his career, Chris formed a professional relationship and personal friendship with Gary Gygax ("Gary"), the co-creator of the tabletop role-playing game Dungeons & Dragons.

7. Defendant Lucian Gygax is Gary Gygax's son.

### BACKGROUND OF CASTLE WOLFMOON

8. In early 1998, Chris approached Gary about contributing to a new tabletop game Chris was designing and writing called Castle Wolfmoon. The Castle Wolfmoon series was going to be written and released in three installments: A Challenge of Arm's, Ritual of the Golden Eyes, and Castle Wolfmoon. Gary expressed excitement about the project and agreed to contribute as a writer.

9. In March 1998, Gary agreed to a contract with ICGD to contribute as a writer and consultant on the game's first installment, A Challenge of Arm's. Additionally, Gary agreed to license the name "Gary Gygax" to ICGD for use on the cover and in advertising. **Exhibit A**, February-March 1998 Agreement with Payment.

10. In June 1998, Gary executed a separate contract with ICGD agreeing to contribute as a writer and consultant on the game's second installment, Ritual of the Golden Eyes. Again, Gary agreed to license the name "Gary Gygax" to ICGD for use on the cover and in advertising. **Exhibit B**, June 1998 Agreement.

11. After successfully working together on the first two installments of the Castle Wolfmoon series, Chris and Gary formed a Wisconsin partnership called Hekaforge Productions. This partnership was responsible for publishing and launching Gary's last published game, Lejendary Adventures.

12. While working on Hekaforge Productions together, Gary encouraged Chris to finish the third installment in the Castle Wolfmoon series and offered his continued assistance.

13. In September 2001, Gary signed a contract with ICGD agreeing to contribute as a writer and consultant on the game's third installment, Castle Wolfmoon. Again, Gary agreed to license the name "Gary Gygax" to ICGD for use on the cover and in advertising. Unlike the other agreements, this agreement did not require ICGD to seek prior written approval for the use of Gary's name. **Exhibit C**, September 2001 Agreement.

14. Gary's enthusiasm to contribute to the third installment was much greater than the first two installments and he sent Chris substantially more content. Eventually the installment had grown to a size that was not economically feasible to publish and the project was put on hold.

15. Over the next 7 years, Chris and Gary often spoke about publishing Castle Wolfmoon.

16. Gary Gygax unfortunately passed away in 2008 prior to Castle Wolfmoon being published.

### CHRIS CLARK'S WORK WITH LUCIAN GYGAX

17. After Gary's untimely passing, Chris and Lukes' professional relationship and friendship grew.

18. Chris and Luke worked together on multiple different titles from 2011 through 2016. Chris would be the main source of writing, editing, and general layout. While Luke made minor contributions to the writing. Although Chris completed a vast majority of the work, Luke would claim to be the main author to boost his reputation as an author of Dungeons and Dragons related material.

19. In addition to working together on several projects, Chris acted as Luke's liaison to publisher Eldritch Enterprises to secure guests for Luke's gaming convention.

20. Luke organized an annual convention celebrating the life and work of his father called Gary Con. Chris regularly attended this annual convention, including presenting new work

at the convention that he published, including the first two first and second installment of Castle Wolfmoon that he wrote with Gary Gygax. In fact, the first two installments of Castle Wolfmoon – both of which advertised Gary Gygax's name on the cover – were sold and advertised at four different Gary Cons. In fact, Chris's booth was located directly across from Luke's at all four conventions – Luke clearly saw his father's name on the advertised Castle Wolfmoon installments being sold.

21. In addition to Chris and Luke's professional work over this time, they also formed a friendship in which they regularly discussed Gary Gygax, both of their families, their respective work, and convention preparations.

22. On numerous occasions between 2009 and 2024, Chris and Luke discussed Gary's involvement in Castle Wolfmoon and his extraordinary contributions to the final unpublished installment. Additionally, Gary's involvement in the final unpublished installment was largely known throughout the industry as one of his last pieces of unpublished writing.

23. By 2018, Luke Gygax fully understood his father's contributions to the Castle Wolfmoon project, how the first two installments credited Gary Gygax's work on the project, and the existence of the unpublished third installment that his father greatly contributed to.

**KICKSTARTING CASTLE WOLFMOON**

24. In early 2024, Chris began plans to kickstart and publish the third installment of Castle Wolfmoon.

25. Chris contracted a publishing company, Pulse Publishing, to assist in publicity and to run the project's Kickstarter.

26. In January 2024, Chris reached out to Luke to discuss his plan to publish his and Gary's final unpublished work and hoped that Luke would like to contribute to the project. Luke

responded by expressing interest in the project and explained that he would run the idea by the rest of his immediate family.

27. On March 13, 2024, Luke officially agreed to contribute as a writer on Castle Wolfmoon and executed a contract with IGCD. **Exhibit D**, Luke Gygax Contract.

28. On the weekend of March 15-16, 2024, Luke held an event called Founders and Legends, which Chris attended and ran an event centered around Castle Wolfmoon's first installment, A Challenge of Arm's. The event was being used to provide publicity to Castle Wolfmoon and highlight its last installment being published later that year.

29. From March 20-24, 2024, Luke held that year's Gary Con. At the annual event a charity auction takes place. Chris and Luke agreed to include an auction item related to Castle Wolfmoon. Chris provided an advertisement that was published in the convention's website. As seen below, it highlighted **"Become a Part of the Gygax Legacy"** across the top, listed Gary Gygax as one of the authors, and stated "possibly the last unpublished fantasy adventure written by the master of fantasy himself, Gary Gygax." It also stated, "the Kick Starter for this project begins June 14th, 2024."



30. On May 26, 2024, Pulse Publishing posted a "Coming Soon" ad on Kickstarter, which referenced Gary Gygax. **Exhibit E**, Kickstarter Ad.

31. Chris coordinated various pre-launch advertisements and events at Game Con Canada, which was scheduled for early July 2024. Additionally, Chris acquired a booth at Game Con Canada and had a pre-launch party in anticipation of the July 2024 launch. The advertisements, booth space, and pre-launch party amounted to a value of over $50,000.

### LUKE GYGAX'S ATTEMPT TO DEFAME CHRIS CLARK AND SABOTAGE CASTLE WOLFMOON

32. On June 14, 2024 – the day Castle Wolfmoon's Kickstarter was set to launch – Defendant Luke Gygax sent an email to Chris Clark explaining that he no longer was able to contribute to Castle Wolfmoon. This was the first time that Luke provided any inclination that he was not going to be directly involved in the Castle Wolfmoon project. **Exhibit F**, Luke Email.

33. On June 14, 2024 – again, the day Castle Wolfmoon's Kickstarter was set to launch – Defendant Luke Gygax posted a lengthy Facebook post deriding Chris Clark's Castle Wolfmoon Kickstarter and claiming Chris Clark was lying to the public when he listed Gary Gygax as one of Castle Wolfmoon's authors. **Exhibit G**, Luke Facebook Post, p. 1. Luke says that Castle Wolfmoon is "claiming to be something my father wrote." He went on to call the decision to list Gary Gygax's name on the cover as "disingenuous" and claims that he is not associated with it (but fails to reference his contract that says otherwise).

34. Luke's post caused dozens of users to comment. Some examples were:

- One person inferred that Chris's use of Gary Gygax's name amounted to identity fraud. **Ex. G**, p. 2.
- Luke's brother, Ernest Gygax, responded to Luke's post to push back on Luke's knowingly false claims, stating that "Dad and Chris Clark work together very tightly…" **Ex. G**, p. 3.
- Another commentor pushed back on Luke's knowingly false claims, stating "it is never a good idea to make attacks on a person's integrity…" **Ex. G**, p. 4.

35. Considering Chris and Luke's lengthy professional history and friendship, their numerous discussions of Gary's involvement in Castle Wolfmoon, the use of Gary's name on the previously published installments of Castle Wolfmoon, Luke's agreement to contribute to the final installment, *and* the auction item related to the final unpublished installment and its clear use of Gary Gygax's name, Chris was shocked by Luke's knowingly false statements.

36. As noted by some commentors to Luke's post, a simple internet search would have demonstrated clear evidence of Gary Gygax's significant involvement in the Castle Wolfmoon

project. Thus, even if Luke didn't already know Gary's involvement (which he clearly did), he posted these false claims with a reckless disregard as to the truthfulness of the claims.

37. Luke's reason for making such knowingly false and salacious claims is clear from the post itself: he did not want the Castle Wolfmoon project to compete with a different project that he was involved in that was also based on work done by Gary Gygax. Luke's post directly states, "[Gary's] focus was Castle Zagyg *which is back in development now*."

38. Unfortunately, Luke's post was seen and discussed by hundreds (if not more) of people in the tabletop gaming community.

39. Although Luke did eventually delete the post, it was seen, reshared, and discussed amongst prospective fans and supporters of the Castle Wolfmoon Kickstarter, as seen below[1]:



---

[1] *See* https://odd74.proboards.com/thread/16355/castle-grey-errr-wolfmoon; https://www.youtube.com/watch?v=0cl3iyvgHPE; .

6968948v1 - 075190.0001

40. Due to Luke's post and how his dishonesty negatively impacted Chris Clark's reputation and put into question the integrity of the third installment of Castle Wolfmoon, it was decided to postpone the launch of the Kickstarter.

41. Prior to Luke's knowingly false claims being published, the Castle Wolfmoon Kickstarter was expected to attract at least $100,000.00 in initial financial backing.

42. Due to Luke's defamatory claims, Chris Clark has suffered significant personal damage to his reputation as a writer and game designer.

### FIRST CAUSE OF ACTION
### DEFAMATION

43. Plaintiff incorporates by reference each and every allegation set forth above as if it were fully set forth herein.

44. Defendant wrote and published false and defamatory statements about Plaintiff and the Castle Wolfmoon project.

45. In the published post, Defendant made numerous knowingly false statements, including claims that Plaintiff was misappropriating Gary Gygax's name, that Plaintiff was lying to the public about the Castle Wolfmoon project's authorship, and that Defendant was not associated with the project.

46. Defendant's goal in making the false and defamatory post was for the express purpose of damaging Plaintiff's reputation and counteracting the potential positive press and community support of Plaintiff's Castle Wolfmoon project.

47. Plaintiff and his writing's reputation has been lowered in the eyes of the community as a result of false claims made by Defendant.

48. Defendant's statements were not privileged or otherwise substantially justified.

49. Upon information and belief, Defendant made the foregoing statements with knowledge they were false.

50. Upon information and belief, Defendant's statements were made with reckless disregard for the truth, as is demonstrated by the fact the statements are demonstrably false and were easily refuted by a simple internet search.

51. As a result of Defendant's false, defamatory statements, Plaintiff has been damaged in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
### PUNITIVE DAMAGES

52. Plaintiff incorporates by reference each and every allegation set forth above as if it were fully set forth herein.

53. As a result of Defendnat's false and defamatory statements, which were made with knowledge of their falsity and with reckless disregard for the truth, Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### BREACH OF CONTRACT

54. Plaintiff incorporates by reference each and every allegation set forth above as if it were fully set forth herein.

55. Plaintiff and Defendant entered a valid and binding agreement on March 13, 2024.

56. Defendant wrongfully breached the agreement by writing Plaintiff on June 14, 2024 and stating that he would no longer be contributing to the project, as required by the agreement.

57. Defendant failed to contribute writing to the project as he agreed to in the agreement.

58. Due to Defendant's breach of the agreement, Plaintiff has been damaged in an amount to be determined at trial, but at least $150,000.00 in lost advertising costs and lost profits.

## FOURTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE

59. Plaintiff incorporates by reference each and every allegation set forth above as if it were fully set forth herein.

60. Plaintiff had a business relationship with Pulse Publishing and Kickstarter to assist in the launch and publishing of the final installment of Castle Wolfmoon.

61. Defendant knew that Plaintiff was planning on publishing the third installment of Castle Wolfmoon and knew that Plaintiff was in a business relationship with Pulse Publishing and Kickstarter to assist publishing the third installment of Castle Wolfmoon.

62. Defendant intentionally took actions to disrupt Plaintiff's business relationship with Pulse Publishing and Kickstarter. Specifically, Defendant intentionally and wrongfully withdrew his contribution to the project and published false statements related to Plaintiff and the Castle Wolfmoon project. These wrongful actions were taken to disrupt Plaintiff's ability to publish the third installment of Castle Wolfmoon with Pulse Publishing and Kickstarter.

63. Defendant's actions were not privileged or otherwise substantially justified.

64. Defendant's actions caused Plaintiff to no longer be able to publish the third installment of Castle Wolfmoon with Pulse Publishing and Kickstarter under the terms of their agreement.

65. As a result of Defendant's tortious interference, Plaintiff has been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant for compensatory and punitive damages in an amount to be proven at trial, but in an amount at least exceeding $100,000, for their injuries together with interest, attorneys' fees, costs, and other compensation or relief the Court may deem just and proper.

## JURY DEMAND

Plaintiff, Christopher Clark, hereby demand a trial by jury with regard to Counts I – IV set forth herein.

Dated this 16th day of July, 2025,

        LIPSITZ GREEN SCIME CAMBRIA LLP

        */s/ Anthony R. Faraco, Jr.*
        Anthony R. Faraco, Jr., Esq.
        *Attorneys for Plaintiff Christopher Clark*
        42 Delaware Avenue, Suite 120
        Buffalo, New York 14202
        (716) 849-1333
        afaraco@lglaw.com